```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
HEALTH & WELFARE FUND OF THE UNITED
FOOD & COMMERCIAL WORKERS LOCAL 2013,
AFL-CIO BY ITS TRUSTEES LOUIS MARK                REPORT AND
CAROTENUTO and STANLEY FLEISHMAN,                 RECOMMENDATION

                                                  21-CV-673 (ENV)

                        Plaintiffs,

        -against-

SENIOR HOME CARE, INC. d/b/a LINK HOME
CARE SERVICES,

                        Defendant.
----------------------------------------------------------------------x
```

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

In this action, plaintiffs –- who are trustees of the Health and Welfare Fund (the "Fund" or "Health and Welfare Fund") of the United Food & Commercial Workers Local 2013, AFL-CIO[1] (the "Union") -- allege that defendant Senior Home Care, Inc. ("defendant" or "Senior Home Care") failed to remit fringe benefit contributions required pursuant to a collective bargaining agreement, in violation of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), and Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 *et seq.* ("LMRA"). See generally Complaint (Feb. 8, 2021) ("Compl."), DE #1.

Currently pending before this Court, on a referral from the Honorable Eric N.

---

[1] The "United Food and Commercial Workers Union Local 348-S" was renamed as Local 2013, effective October 30, 2013. See Resolution of the Board of Trustees of Local 348 Health and Welfare Fund (Mar. 29, 2021), Electronic Case Filing Docket Entry ("DE") #11-4.

Vitaliano, is plaintiffs' motion for default judgment against Senior Home Care. See Motion for Default Judgment (Mar. 29, 2021), DE #9; Order Referring Motion (Mar. 30, 2021). For the reasons that follow, the Court recommends that default judgment be entered against defendant in the amounts set forth below.

## BACKGROUND

The Fund is a joint trustee fund established pursuant to trust indentures in accordance with the LMRA. See Compl. ¶¶ 4-7. The Fund constitutes a multi-employer/employee benefit plan, within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §§ 1002(3) and (37). See Compl. ¶ 7.

Defendant Senior Home Care entered into, and was subject to the terms and conditions of, two collective bargaining agreements with the Union, which covered the periods of January 1, 2014 through June 30, 2017 and July 1, 2017 through June 30, 2020 (the "CBAs"), respectively. See Compl. ¶ 13; Agreement between the Union and Senior Home Care dated January 1, 2014 (Mar. 29, 2021) (the "2014 CBA"), DE #11-2; Agreement between the Union and Senior Home Care dated November 22, 2017 (Mar. 29, 2021) (the "2017 CBA"), DE #11-3. The 2014 and 2017 CBAs provide, *inter alia*, that Senior Home Care is required to remit health and welfare fringe benefit contributions to the Fund, on behalf of its represented employees at specified rates, at four care facilities, located in Manhattan, White Plains, Palisades and Staten Island. See Compl. ¶¶ 13, 15; 2014 CBA, Art. VIII; 2017 CBA, Art. VIII.

For various months between November 1, 2014 and January 31, 2018, defendant failed

to remit a portion of its required fringe benefit contribution payments. See Compl. ¶ 15; Affidavit of Jacqueline Dowling (Mar. 29, 2021) ("Dowling Aff.") ¶ 3, DE #10; see also Affidavit of Jacqueline Dowling (May 14, 2021) ("Supp. Dowling Aff.") ¶ 4, DE #18. Defendant has not paid any portion of the outstanding amount. See Compl. ¶ 16.

On February 8, 2021, plaintiffs filed the instant action, seeking to recover delinquent contributions, interest, statutory damages, and attorney's fees. See generally Compl. Although duly served with process, Senior Home Care failed to respond to the Complaint or otherwise appear in this action. See Summons Returned Executed (Mar. 8, 2021), DE #6. Accordingly, on March 26, 2021, the Clerk of the Court entered a notation of default, see Clerk's Entry of Default (Mar. 26, 2021), DE #8, and a few days later, plaintiffs moved for default judgment. While the Complaint identifies contribution deficiencies of "no less than $11,923.00," Compl. ¶¶ 15, 19, *ad damnum* clause, plaintiffs, in their original default judgment motion, sought $12,328.50 in unpaid fringe benefit contributions, see Dowling Aff. ¶ 3; Affidavit of James M. Steinberg (Mar. 29, 2021) ("Steinberg Aff.") ¶ 9, DE #11.

By order dated April 29, 2021, this Court requested that plaintiffs supplement their submissions to address various deficiencies, including the lack of information in the record to independently support plaintiffs' calculation of contributions owed. See Scheduling Order (Apr. 29, 2021), DE #15. In addition, the Court directed plaintiffs to show cause why their request for damages accruing before February 8, 2015 should not be denied as outside the applicable limitations period. See id. On May 14, 2021, plaintiffs supplemented their submissions by providing monthly reports to demonstrate how the deficiencies were calculated.

See Health & Welfare Delinquent Accounts Receivable Worksheets (May 14, 2021), DE #17-1 (Palisades location), #17-2 (Manhattan location), #17-3 (White Plains location), #17-4 (Staten Island location). In addition, plaintiffs reduced their request for damages "to eliminate contributions with due dates that accrued more than six (6) years before the filing of the Complaint[.]" Affidavit of James M. Steinberg (May 14, 2021) ("Supp. Steinberg Aff.") ¶ 2, DE #17; see Supp. Dowling Aff. ¶ 5. Plaintiffs now seek unpaid contributions in the amount of $9,431.72. See Amended Statement of Damages (May 14, 2021), DE #17-5.

## DISCUSSION

### I.   Applicable Legal Standard – Default Judgment

After the Clerk of the District Court enters a Certificate of Default, the District Court may, on a plaintiff's application, enter a default judgment if a defendant "has failed to plead or otherwise defend" an action. See Fed R. Civ. P. 55(a), (b); see also S.D.N.Y./E.D.N.Y. Local Civ. R. 55.2(b). A defendant's default is an admission of all well-pleaded factual allegations in the complaint except those relating to damages. Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); see City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011); Fed. R. Civ. P. 8(b)(6). Nevertheless, a pleading's legal conclusions are not assumed to be true, and, on a motion for default judgment, the factual allegations in the complaint must themselves be sufficient to establish a right to relief. See Chen v. JP Standard Constr. Corp., No. 14-CV-1086 (MKB), 2016 WL 2909966, at *4 (E.D.N.Y. Mar. 18, 2016) (citing Stein v. Valentine & Kebartas, Inc., No. 10 CV 2465

4

(RJD), 2012 WL 1416924, at *4-5 (E.D.N.Y. Mar. 15, 2012)), adopted, 2016 WL 2758272 (E.D.N.Y. May 12, 2016); see also Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (district court is "required to determine whether the [plaintiff's] allegations establish [defendant's] liability as a matter of law"). Moreover, a fact is not "'well-pleaded' if it is inconsistent with other allegations of the complaint[,]" *In re* Indus. Diamonds Antitrust Litig., 119 F.Supp.2d 418, 420 (S.D.N.Y. 2000), or is "contrary to uncontroverted material in the file of the case," Trans World Airlines, Inc. v. Hughes, 449 F.2d 51, 63 (2d Cir. 1971), rev'd on other grounds, 409 U.S. 363 (1973).

Because the extent of the damages pleaded by a plaintiff is not deemed to be established by the default, the Court must conduct "an inquiry in order to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citing Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997)). This inquiry may be accomplished by evaluating and analyzing affidavits and other documentary evidence submitted by the plaintiff in regards to the level of damages sought. See Greathouse v. JHS Sec. Inc., 784 F.3d 105, 116 (2d Cir. 2015); Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989). It is within a court's discretion to determine whether the plaintiff's burden has been met, and whether or not to hold an evidentiary hearing. See Action S.A. v. Marc Rich & Co. Inc., 951 F.2d 504, 508 (2d Cir. 1991). The moving party is entitled to all reasonable inferences from the evidence it offers. See Romanowicz, 577 F.3d at 84; Au Bon Pain, 653 F.2d at 65.

**II.     Liability**

    **A.     ERISA**

Section 515 of ERISA mandates that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement."  29 U.S.C. § 1145; see Finkel v. Alltek Sec. Sys. Grp., Inc., No. 10-CV-4887 (DLI)(VVP), 2011 WL 4543498, at *4 (E.D.N.Y. Aug. 26, 2011), adopted as modified on other grounds, 2011 WL 4543495 (E.D.N.Y. Sept. 29, 2011).  Plan fiduciaries may bring civil actions to enforce the provisions of such plans and/or collective bargaining agreements.  See 29 U.S.C. § 1132(a)(3).

Plaintiffs' unanswered Complaint establishes defendant's liability under ERISA with respect to the unpaid benefit contributions for defendant's employees.  Plaintiff trustees of the Fund are plan fiduciaries as defined by Section 3(21) of ERISA, 29 U.S.C. § 1002(21), and Senior Home Care is an "employer" within the meaning of Section 3(5), 29 U.S.C. § 1002(5), see Compl. ¶ 11.  Furthermore, the Fund is an "employee benefit plan" and "multiemployer plan" within the respective meanings of Section 3(3), 29 U.S.C. § 1002(3), and Section 3(37), 29 U.S.C. § 1002(37).  See Compl. ¶¶ 6-7.  Since plaintiffs allege that Senior Home Care failed to make contributions to the Fund in violation of the applicable collective bargaining agreements, see id. ¶ 15, this Court respectfully recommends that a default judgment be entered against Senior Home Care in favor of the Fund on their Second Cause of Action, for violations of ERISA.

Nevertheless, the applicable statute of limitations for an ERISA claim for unpaid contributions is six years. See Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan, 572 F.3d 76, 78 (2d Cir. 2009). As plaintiffs now acknowledge, see Supp. Steinberg Aff. ¶ 2, they may not recover for unpaid contributions that were due before February 8, 2015.

### B.     The LMRA

Section 301 of the LMRA provides for federal jurisdiction over "[s]uits for violation[s] of contracts between an employer and a labor organization representing employees in an industry affecting commerce[.]" 29 U.S.C. § 185(a). Plaintiffs allege that "Local 2013 is a labor organization as defined in Section 2 of the LMRA . . . ." Compl. ¶ 14. Plaintiffs also allege that Senior Home Care "is an employer within the meaning of . . . Section 301 of the LMRA . . . ." See id. ¶ 11. Finally, plaintiffs allege that at all times relevant to this action, Senior Home Care agreed to be bound by the terms and conditions of the collective bargaining agreements with Local 2013, which, *inter alia*, required Senior Home Care to remit fringe benefit contributions to the Fund on a monthly basis for covered employees. See id. ¶¶ 13, 15. Therefore, plaintiffs' allegation that defendant failed to remit fringe benefit contributions establishes a violation of Section 301 for defendant's failure to comply with the terms of the CBAs, as charged in plaintiffs' First Cause of Action. See Cummings v. W. Harlem Cmty. Org., Inc., 17-CV-4236 (RJD) (SMG), 2018 WL 3435058, at *3 (E.D.N.Y. July 17, 2018); Bricklayers Ins. and Welfare Fund v. Everest Masonry Constr., 16-CV-1622 (NG) (SMG), 2017 WL 4179853, at *2 (E.D.N.Y. June 26, 2017), adopted, 2017 WL 4217116 (E.D.N.Y.

7

Sept. 20, 2017).

**III. Damages**

Plaintiffs seek to recover delinquent ERISA contributions, interest, statutory damages, and attorney's fees and costs. See Steinberg Decl. ¶ 6. In support of their demand for damages, plaintiffs have submitted the declarations of Jacqueline Dowling, the Fund Administrator for the Health and Welfare Fund, explaining how the delinquent contributions were calculated, as well as supporting monthly reports and accounts receivable worksheets. See Supp. Dowling Decl. ¶ 4 & Exs. A-D, DE #17-1, #17-2, #17-3, #17-4.

**A. Delinquent Contributions**

Plaintiffs are entitled to recover delinquent contributions owed to the Fund. See 29 U.S.C. § 1132(g)(2)(A); see also 29 U.S.C. § 185(a).

Pursuant to the CBAs, Senior Home Care was obligated to pay monthly fringe benefit contributions to plaintiffs based on the rates specified in the agreements. See 2014 CBA, Art. VIII; 2017 CBA, Art. VIII. Plaintiffs calculated the amount Senior Home Care was obligated to pay for each month, per employee, based upon the employee rosters maintained by plaintiffs for each of the four care facilities operated by Senior Home Care, in Manhattan, White Plains, Palisades and Staten Island. See Dowling Aff. ¶ 3; Supp. Dowling Aff. ¶ 4. Plaintiffs compared the amount due with the amount that Senior Home Care remitted to the Fund and calculated any monthly deficiencies. See Supp. Dowling Aff. ¶ 4. For the period February 2015 through January 2018, plaintiffs calculate unpaid contributions in the amount of

8

$9,431.72.[2]  See Amended Statement of Damages.

In the absence of conflicting evidence, this Court credits the monthly reports and worksheets submitted by plaintiffs.  Having reviewed those documents, and conducted an independent calculation, the Court finds that plaintiffs correctly claim unpaid contributions in the amount of $9,431.72 for the four locations, as follows:

| Month[3] | Unpaid Contributions |
|---|---|
| February 2015 | $ 120.00 |
| March 2015 | $ 120.00 |
| January 2017 | $ 530.00 |
| February 2017 | $ 497.50 |
| March 2017 | $ 132.50 |

---

[2] Monthly contributions are due on the 30th day of the month following the month in which employees performed covered work.  See Steinberg Aff. ¶ 5; Supp. Steinberg Aff. ¶ 2.  For example, the unpaid contributions for February 2015 were due on March 30, 2015.

[3] Rule 54 of the Federal Rules of Civil Procedure provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  In the Complaint, plaintiffs did not include February and March 2015 within the periods of delinquency.  See Compl. ¶ 15.  Nevertheless, the Complaint sought unpaid contributions in an "amount of no less than $11,923.00," Compl. ¶¶ 15, 19, whereas plaintiffs seek $9,431.72 in unpaid contributions on default.  The purpose of Rule 54(c) is to "ensure[] that a defendant who is considering default can look at the damages clause, satisfy himself that he is willing to suffer judgment in that amount, and then default without the need to hire a lawyer."  Silge v. Merz, 510 F.3d 157, 160 (2d Cir. 2007).  Since the damages sought on default here are similar in kind to, but less in amount than, that demanded in the Complaint, Senior Home Care was on notice of the potential extent of plaintiffs' recovery.  See Mason Tenders Dist. Council Welfare Fund v. I.M.I. Constr. Corp., No. 99 Civ.12105 LLS AJP., 2004 WL 1700615, at *2 (S.D.N.Y. July 30, 2004) (noting that complaint alleged that the unpaid benefits were "at least" the amounts stated therein); 10 Moore's Federal Practice - Civil § 55.34 (2021) (the court "may award less than requested in the pleadings, but Rule 54(c) establishes a ceiling on the amount that may be awarded"); see also Grace v. Rosenstock, 85-CV-2039 (DGT), 2004 U.S. Dist. LEXIS 29654, at *24-25 (E.D.N.Y. Oct. 4, 2004) (request for monetary damages on default, when only injunctive relief was requested in the complaint, "violates Rule 54(c) as 'different in kind' from 'that prayed for in the demand for judgment'").

| Month | Unpaid Contributions |
|---|---|
| April 2017 | $1,060.00 |
| May 2017 | $ 397.50 |
| June 2017 | $ 662.50 |
| July 2017 | $ 832.00 |
| August 2017 | $ 964.50 |
| September 2017 | $1,097.00 |
| October 2017 | $1,229.50 |
| November 2017 | $ 964.50 |
| December 2017 | $ 555.78 |
| January 2018 | $ 268.44 |
| **TOTAL** | **$9,431.72** |

**B.    Interest**

Under Section 502(g)(2) of ERISA, where an employer fails to remit required contributions to a plan, the plan is entitled to interest on the unpaid contributions, calculated at the rate "provided under the plan," or, if unstated, the rate prescribed in 26 U.S.C. § 6621. See 29 U.S.C. § 1132(g); Finkel v. Omega Commc'n Servs., Inc., 543 F.Supp.2d 156, 161 (E.D.N.Y. 2008). The rate prescribed in 26 U.S.C. § 6621 is "the Federal short-term rate [of interest] . . . plus 3 percentage points." 26 U.S.C. § 6621(a)(2).

Plaintiffs seek prejudgment interest on the unpaid fringe benefit contributions calculated at the rate of 5.25 percent, according to the terms of a Collection Policy promulgated by the trustees of the Fund. See Dowling Aff. ¶ 4; Policy and Procedure for the Collection of Delinquent Contributions And Payroll Audits (Mar. 29, 2021) ("Collection Policy") § 5, ¶ 1, DE #11-6. As discussed below, however, plaintiffs provide no basis for the Court to conclude that the Fund's Collection Policy is binding upon Senior Home Care for contributions that were due pursuant to the 2014 CBA.

          1.        Interest on Unpaid Contributions Subject to the 2014 CBA

The 2014 CBA contains no provision that expressly incorporates the terms of the Collection Policy, or the terms of the Fund's Trust Agreement, which authorizes the trustees to enact rules and procedures necessary to administer the Benefit Funds. See Restated and Amended Agreement and Declaration of Trust of the Local 348 Health and Welfare Fund (Mar. 29, 2021) (the "Trust Agreement"), Art. V, § 9, DE #11-4. Therefore, the Court concludes that for the period covered by the 2014 CBA, Senior Home Care is not bound by the Collection Policy. See Trs. of Metal Polishers Loc. 8A-28A Funds v. Nu Look Inc., 18-CV-3816 (PKC), 2020 WL 6370146, at *5 (E.D.N.Y. Feb. 14, 2020) (defendant was not bound to the provisions contained in an unsigned Collection Policy that was not referenced in the CBA), adopted, 2020 WL 5793204 (E.D.N.Y. Sept. 29, 2020); Trs. of Metal Polishers Local 8A-28A Funds v. Remco Maint., LLC, 17-CV-2577 (RJD), 2018 WL 2063184, at *3 (E.D.N.Y. Jan. 11, 2018), adopted, Order (Feb. 9, 2018). As the 2014 CBA does not designate an interest rate, the Court applies the interest rate provided for in 26 U.S.C. § 6621.

11

Section 6621 provides that the interest rate is calculated by adding 3 percentage points to the Federal Short Term Interest Rate, which changes quarterly, rounded to the nearest full percent. See 28 U.S.C. § 6621(a), (b). "Courts may use an average of the applicable rates during the relevant time period rather than calculating interest quarterly." Annuity, Welfare, and Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs Loc. 15, 15A, 15C & 15D, AFL-CIO by Callahan v. Barbella Env't Tech., Inc., 17-CV-4397 (CBA), 2018 WL 4403393, at *6 (E.D.N.Y. Mar. 1, 2018) (collecting cases), adopted, 2018 WL 4388451 (E.D.N.Y. Sept. 14, 2018). From March 31, 2015 to July 31, 2017 (when the delinquencies arose during the term of the 2014 CBA), the average annual short-term interest rate fluctuated between 0.40 percent and 1.22 percent. See https://apps.irs.gov/app/picklist/list/federalRates.html. The Court recommends applying an average short-term rate of one percent (after rounding to the nearest full percent), plus three points, for an interest rate of 4 percent per year for unpaid contributions subject to the 2014 CBA (for contributions earned up until June 30, 2017).

  2.  Interest on Unpaid Contributions Subject to the 2017 CBA

Unlike the 2014 CBA, the 2017 CBA expressly binds Senior Home Care to the "rules and policies adopted by the" Fund, and incorporates the provisions of the Trust Agreement. See 2017 CBA, Art. VIII, § 3. Specifically, the 2017 CBA provides that the Trust Agreement:

> is hereby made a part of this Agreement with the same force and effect as if fully incorporated herein. The Employer and Union hereby agree that upon the execution of this Agreement they shall be deemed parties to the Trust. The

12

>employer agrees to comply with the trust agreement and all rules and policies adopted by the fund.

Id.  The Trust Agreement, in turn, provides that employers are subject to the policies and procedures promulgated by the trustees.  See Trust Agreement, Art. V, § 9(a).  Therefore, Senior Home Care is bound to the provisions contained in the Collection Policy for the time period covered by the 2017 CBA.  See Annuity & Health & Welfare Funds of the United Food & Com. Workers Loc. 2013, AFL-CIO by Carotenuto v. Zahmel Rest. Supplies Corp., 16-CV-457 (DLI)(RER), 2017 WL 4480150, at *1, *2 (E.D.N.Y. Sept. 30, 2017) (applying Collection Policy promulgated pursuant to trust agreements that established the plaintiff fringe benefit funds and that were incorporated into the CBA).

The Collection Policy governing the Fund provides that interest accrues from the due date for delinquent contributions, "at the rate of Prime[4] plus two (2) percent, as adjusted on January 1 and July 1 of each year[.]"  See Collection Policy, § V, ¶ 1.  Plaintiffs calculated interest at a rate of 5.25%, as the prime rate as of January 1, 2021 was 3.25%.  See Dowling Aff. ¶ 4.  The Court adopts the 5.25% interest rate used by plaintiffs throughout the delinquency covered by the 2017 CBA because 3.25% is the lowest Prime Rate during that period, which thus inures to the benefit of defendant.  See Barbella Envtl. Tech., 2018 WL 4403393, at *5 (recommending applying the interest accrual date suggested by plaintiffs since it benefitted defaulting defendant).

---

[4] The Collection Policy specifies that the "Prime Rate" is the interest rate published by the Wall Street Journal. See Collection Policy § V, ¶ 1.

13

The Court recommends awarding interest in the amount of $1,821.20 through September 30, 2021, and at a daily rate of $1.23 thereafter until the entry of judgment:

| Month | Due Date | Unpaid Contributions | No. of days | Daily Interest Rate | Interest Due |
|---|---|---|---|---|---|
| February 2015 | 3/31/15 | $ 120.00 | 2375 | 0.01 | $  23.75 |
| March 2015 | 4/30/15 | $ 120.00 | 2346 | 0.01 | $  23.46 |
| January 2017 | 2/28/17 | $ 530.00 | 1676 | 0.06 | $ 100.56 |
| February 2017 | 3/31/17 | $ 497.50 | 1645 | 0.05 | $  82.25 |
| March 2017 | 4/30/17 | $ 132.50 | 1615 | 0.01 | $  16.15 |
| April 2017 | 5/31/17 | $1,060.00 | 1584 | 0.12 | $ 190.08 |
| May 2017 | 6/30/17 | $ 397.50 | 1554 | 0.04 | $  62.16 |
| June 2017 | 7/31/17 | $ 662.50 | 1523 | 0.07 | $ 106.61 |
| July 2017 | 8/31/17 | $ 832.00 | 1492 | 0.12 | $ 179.04 |
| August 2017 | 9/30/17 | $ 964.50 | 1462 | 0.14 | $ 204.68 |
| September 2017 | 10/31/17 | $1,097.00 | 1431 | 0.16 | $ 228.96 |
| October 2017 | 11/30/17 | $1,229.50 | 1401 | 0.18 | $ 252.18 |
| November 2017 | 12/31/17 | $ 964.50 | 1370 | 0.14 | $ 191.80 |
| December 2017 | 1/31/18 | $ 555.78 | 1339 | 0.08 | $ 107.12 |
| January 2018 | 2/28/18 | $ 268.44 | 1311 | 0.04 | $  52.40 |
| **TOTAL** | | | | 1.23 | **$1,821.20** |

### C.   Statutory Damages

Pursuant to Section 502(g)(2) of ERISA, plaintiffs are also entitled to statutory damages on the ERISA delinquencies in "an amount equal to the greater of -- (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent" of the amount of unpaid contributions. 29 U.S.C. § 1132(g)(2)(C). Plaintiffs request liquidated damages in the amount of 20 percent of the unpaid contributions to the Fund. See Amended Statement of Damages, DE #17-5. Although the Collection Policy and the Trust Agreement, which apply to the unpaid contributions that were due pursuant to the 2017 CBA, provide for liquidated damages of 20 percent of delinquent contributions owed, see

14

Trust Agreement, Art. IV, § 5; Collection Policy, § V, ¶ 2, those liquidated damages provisions do not apply to the earlier time period. Therefore, in connection with unpaid contributions for the period February 2015 through June 2017, this Court recommends awarding additional interest of $605.02, calculated through September 30, 2021, and at a daily rate of $0.37 thereafter until the entry of judgment; and, in connection with unpaid contributions for the period July 2017 through January 2018, this Court recommends awarding liquidated damages of $1,182.34 ($5,911.72 x 20%), pursuant to 29 U.S.C. § 1132(g)(2)(C), for a total of $1,787.36 in statutory damages.

## IV. Attorney's Fees and Costs

### A. Attorney's Fees

ERISA provides for an award of attorney's fees where, as here, plaintiffs obtain a favorable judgment under Section 515. See 29 U.S.C. § 1132(g)(2)(D). Plaintiffs bear the burden of proving the reasonableness of the fees sought. See Savoie v. Merchs. Bank, 166 F.3d 456, 463 (2d Cir. 1999). In considering an application for attorney's fees, the Court must first determine the presumptively reasonable fee. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 183-84 (2d Cir. 2008). This presumptively reasonable fee - or lodestar[5]- is essentially "'what a reasonable, paying client would be willing to pay,' given that such a party wishes 'to spend the minimum necessary to litigate the case effectively.'" Simmons v. New York City Transit Auth., 575 F.3d 170, 174

---

[5] The lodestar is the product of the number of hours reasonably expended on the litigation and a reasonable hourly rate. See Arbor Hill, 522 F.3d at 183.

15

(2d Cir. 2009) (quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 493 F.3d 110, 112, 118 (2d Cir. 2007)).

Courts can and should exercise broad discretion in determining a reasonable fee award. See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) ("The court necessarily has discretion in making this equitable judgment."); Arbor Hill, 522 F.3d at 190 (referencing the court's "considerable discretion"). The method for determining reasonable attorney's fees in this Circuit is based on a number of factors, such as the labor and skill required, the difficulty of the issues, the attorney's customary hourly rate, the experience, reputation and ability of the attorney, and awards in similar cases. See Arbor Hill, 522 F.3d at 186 n.3, 190. In particular, when assessing an attorney's requested hourly rate, courts typically consider other rates awarded in the district in which the reviewing court sits. This is known as the "forum rule." See Simmons, 575 F.3d at 174-75 (recounting history of the forum rule); see also Arbor Hill, 522 F.3d at 191 ("We presume, however, that a reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally.").

Once the Court determines the reasonable hourly rate, it must multiply that rate by the number of hours reasonably expended, in order to determine the presumptively reasonable fee. See Arbor Hill, 522 F.3d at 190. With very limited exceptions, "contemporaneous time records are a prerequisite for attorney's fees in this Circuit." N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147 (2d Cir. 1983). The Court must review these time records and the hours an attorney billed in order to determine the reasonableness of such

and, in doing so, should examine the value of the work product and "exclude excessive, redundant or otherwise unnecessary hours." Concrete Flotation Sys., Inc. v. Tadco Constr. Corp., No. 07-CV-319 (ARR)(VVP), 2010 WL 2539771, at *5 (E.D.N.Y. Mar. 15, 2010) (quoting Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999)), adopted, 2010 WL 2539661 (E.D.N.Y. June 17, 2010); see Hensley, 461 U.S. at 434; Lunday v. City of Albany, 42 F.3d 131, 133 (2d Cir. 1994).

### 1. Hourly Rates

Plaintiffs seek to recover for the time spent by one attorney on this matter, James M. Steinberg, who has been practicing in this area of law for more than twenty-five years. See Steinberg Aff. ¶ 12. He requests that he be awarded his billing rate of $302.00 per hour for his work on this matter. See id.

The rate requested by counsel is within the range usually awarded in ERISA matters in this District. Typically, courts in the Eastern District of New York award partners in the range of $200 to $400 per hour, $200 to $375 per hour for senior associates, and $100 to $150 for junior associates, for their work on similar ERISA matters. See Gesualdi v. Interstate Payroll Co., Inc., 2:14-cv-06780 (ADS)(SIL), 2019 WL 109379, at *8 (E.D.N.Y. Jan. 4, 2019) (collecting cases); Trs. of New York City Dist. Council of Carpenters Welfare Fund v. Best Floors, Inc., 16-CV-3429 (ARR)(ST), 2018 WL 3768586, at *4 (E.D.N.Y. July 23, 2018) (recommending award of $200 per hour for "of counsel" with less than 5 years' experience and $300 per hour for attorney with 9 years' experience), adopted, 2018 WL 3785331 (E.D.N.Y. Aug. 8, 2018). In fact, higher hourly rates for Mr. Steinberg's work

17

have been approved by courts in this District.  See, e.g., Annuity, Pension, Welfare & Training Funds of the I.U.O.E., Local 14-14B, AFL-CIO v. Superior Site Work, Inc., No. 15-CV-543 (MKB), 2017 WL 639248, at *7 (E.D.N.Y. Feb. 16, 2017) (approving Mr. Steinberg's requested rate of $350 per hour); Annuity, Pension, Welfare & Training Funds of the I.U.O.E., Local 14, 14B, AFL-CIO v. Falcon Steel Co., Inc., No. 16-CV-0020 (RRM), 2016 WL 8465987, at *5 (E.D.N.Y. Apr. 16, 2016) (approving rate of $360 per hour for Mr. Steinberg), adopted, 2017 WL 945851 (E.D.N.Y. Mar. 8, 2017).[6]  Accordingly, the Court recommends approving the hourly rate requested.

2. Hours Billed

Mr. Steinberg billed 6.0 hours on this matter.  See Steinberg Aff. ¶ 12.  In support, plaintiffs attach what appears to be a reconstruction of Mr. Steinberg's contemporaneous time records.  See Time Records (Mar. 29, 2021), DE #11-8.  These records provide a description of the work completed and the amount of time expended.  The amount of time requested is reasonable.

3. Presumptively Reasonable Fee

Applying the hourly rate described above to the number of hours claimed, this Court recommends awarding plaintiffs attorney's fees of $1,812.00.

**B.   Costs**

Section 502(g)(2) of ERISA provides that in any action brought by a fiduciary on behalf of a plan in which judgment in favor of the plan is awarded, the court shall allow "costs of the

---

[6] The Court assumes that Mr. Steinberg billed at a lower rate in this case because, as the only attorney who worked on this matter, he necessarily performed tasks that could have been handled by an associate-level attorney at a lower hourly rate.

action, to be paid by the defendant." 29 U.S.C. § 1132(g)(2)(D).  Plaintiffs request $606.00 in costs — representing a $402 filing fee, see Amended Statement of Damages, and $204 for service of the Complaint, see Invoice (Mar. 29, 2021), DE #11-7.  These costs are reasonable, but the court docket reflects a court filing fee of only $400.00.  Therefore, the Court recommends that plaintiffs be awarded costs in the amount of $604.00.

## CONCLUSION

For the foregoing reasons, this Court recommends that default judgment be entered against Senior Home Care, Inc. and that plaintiffs be awarded $15,456.28, plus interest at a daily rate of $1.60[7] from September 30, 2021 until the entry of judgment, in the following amounts: (1) unpaid contributions in the amount of $9,431.72; (2) interest in the amount of $1,821.20 through September 30, 2021; (3) statutory damages in the amount of $1,787.36; (4) $1,812.00 in attorney's fees; and (5) $604.00 in costs.

Any objections to the recommendations contained herein must be filed with Judge Vitaliano on or before October 7, 2021.  Failure to file objections in a timely manner may waive a right to appeal the District Court order.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*).

---

[7] The daily interest includes $0.37 in additional interest, as a portion of statutory damages under section 1132(g)(2).  See *supra* pp. 14-15.

The Clerk is requested to mail a copy of this Report and Recommendation to Senior Home Care, Inc. at 305 West End Avenue, New York, New York 10023.

**SO ORDERED.**

**Dated:**	**Brooklyn, New York**
	**September 20, 2021**

/s/ *Roanne L. Mann*
    **ROANNE L. MANN**
    **UNITED STATES MAGISTRATE JUDGE**